UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,    Civil Case No. 1:18-cv-01140

v.            HON. PAUL L. MALONEY
             U.S. District Judge
THE HINMAN COMPANY,
             HON. PHILLIP J. GREEN
     Defendant.    U.S. Magistrate Judge
_____/

## ANSWER TO AMENDED COMPLAINT FOR DAMAGES, AFFIRMATIVE DEFENSES, AND JURY DEMAND

  Defendant The Hinman Company, by counsel, now submits this Answer in response to Plaintiff's Amended Complaint. Defendant notes that, for ease of future reference, Plaintiff's Amended Complaint allegations are set forth verbatim, with Defendant's responses following each allegation:

### I. INTRODUCTION

  This action is brought by the United States of America to recover civil penalties from Hinman under 49 U.S.C. § 46301(a).

  **ANSWER:** This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, Hinman admits that the action is brought by the United States of America to recover civil penalties from Hinman under 49 U.S.C. § 46301(a), but denies any wrongdoing and denies liability.

### II. JURISDICTION AND VENUE

  1.  This Court has subject matter jurisdiction over this action under 49 U.S.C. §§ 46301(d)(4), 46305; and 28 U.S.C. § 1345.

**ANSWER**: Hinman admits that Plaintiff has alleged jurisdiction under 49 U.S.C. §§ 46301(d)(4), 46305; and 28 U.S.C. § 1345. Hinman states that this allegation is a legal conclusion not subject to admission or denial. To the extent a response is required, deny.

2. This Court has personal jurisdiction over the Defendant and venue is proper in this district under 49 U.S.C. § 46106 and 28 U.S.C. §§ 1391(b), 1395, because the Defendant can be found in, resides in, has transacted business in, and/or a substantial part of the events or omissions giving rise to this claim occurred in the Western District of Michigan.

**ANSWER**: Hinman admits that Plaintiff has alleged personal jurisdiction under 49 U.S.C. § 46106 and 28 U.S.C. §§ 1391(b), 1395. This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, admit.

### III. DEFENDANT'S CONDUCT AND VIOLATIONS

<u>Defendant's Timeshare Agreements</u>

3. At all relevant times, Hinman's wholly owned subsidiary, HincoJet, LLC, owned a Raytheon Aircraft Company Beechjet 400A, registered as N580RK, and a Hawker 900XP, registered as N580RJ.

**ANSWER**: Admit.

4. At all relevant times, Hinman did not hold a certificate issued under 14 C.F.R. part 119 (part 119) and operations specifications appropriate to operate under 14 C.F.R. part 135 (part 135).

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, Hinman expressly denies that it held itself out as

holding a certificate issued under 14 C.F.R. part 119 (part 119) and operations specifications appropriate to operate under 14 C.F.R. part 135 (part 135). Hinman admits that, at all relevant times, Hinman did not hold a certificate issued under 14 C.F.R. part 119 (part 119) and operations specifications appropriate to operate under 14 C.F.R. part 135 (part 135).

5. On or about August 11, 2009, Hinman entered into an Aircraft Timeshare Agreement with Harold Zeigler Auto Group (Zeigler) (timesharee) for the use of N580RK.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, admit.

6. On or about March 24, 2010, Hinman entered into an Aircraft Timeshare Agreement with Zeigler (timesharee) for the use of N580RJ.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, admit.

7. On or about August 4, 2011, Hinman entered into an Aircraft Timeshare Agreement with the Gregory Jennings, Jr. and Nicole Jennings Revocable Trust (Jennings Trust) (timesharee) for the use of N580RK.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, admit.

8. On or about August 4, 2011, Hinman entered into an Aircraft Timeshare Agreement with the Gregory Jennings, Jr. and Nicole Jennings Revocable Trust (timesharee) for the use of N580RJ.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, admit.

9. On or about November 1, 2013, Hinman entered into an Aircraft Timeshare Agreement with Angel Wings, LLC (Angel Wings) (timesharee) for the use of N580RK.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, admit.

10. On or about November 1, 2013 Hinman entered into an Aircraft Timeshare Agreement with Angel Wings (timesharee) for the use of N580RJ.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, admit.

11. Each of the Aircraft Timeshare Agreements described in paragraphs 5-10 states that Hinman would provide the aircraft and the crew.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, admit.

12. Each of the Aircraft Timeshare Agreements described in paragraphs 5-10 provides that Hinman shall "provide the aircraft to the TIMESHAREE on a time sharing basis in

accordance with the provisions of sections 91.501(b)(6), 91.501(c)(1) and 91.501(d) of the [Federal Aviation Regulations] FARs for the period commencing upon execution of this Agreement and continuing until terminated...."

**ANSWER**: Admit.

13. Each of the Aircraft Timeshare Agreements described in paragraphs 5-10 provides that Hinman shall bill the timesharee an amount equal to the sum of expenses of operating the flight to the extent prescribed by 14 C.F.R. § 91.501(d), and itemized those expenses as including:

  (a) Fuel, oil, lubricants and other additives;

  (b) Travel expenses of the crew, including food, lodging and ground transportation;

  (c) Hangar and tie-down costs away from the Aircraft's base of operation;

  (d) Insurance obtained for the specific flight;

  (e) Landing fees, airport taxes, and similar assessments;

  (f) Customs, foreign permit, and similar fees directly related to the flight;

  (g) In flight food and beverages;

  (h) Passenger ground transportation;

  (i) Flight planning and weather contract services; and

  (j) An additional charge equal to the one-hundred percent (100%) of the expenses listed in subparagraph (a) above.

**ANSWER**: Admit.

14. Each of the Aircraft Timeshare Agreements described in paragraphs 5-10 provides that Hinman shall provide the timesharee an invoice for the charges specified and that "[a] 11 such invoices shall separately itemize the expenses in items (a) through (j) for each flight included in the invoice."

**ANSWER**: Admit.

Defendant's Timeshare Invoices Exceeded Permissible Costs

15. Between October 4, 2013, and January 20, 2017, Hinman sent the timesharees invoices for a total of approximately 812 flights.

**ANSWER**: Admit.

16. Each of the invoices Hinman sent between October 4, 2013, and December 23, 2016, to the timesharees pursuant to the timeshare agreement included a charge for "fuel x's 2".

**ANSWER**: Admit.

17. Each of the invoices Hinman sent between October 4, 2013, and December 23, 2016, to the timesharees pursuant to the timeshare agreement included a charge for a maintenance service plan ("MSP").

**ANSWER**: Admit.

18. MSP charges are not authorized under 14 C.F.R. § 91.501(d)(l)-(9).

**ANSWER**: This allegation is a legal conclusion not subject to admission or denial. To the extent a response is required, deny.

19. Hinman charged for more than the amount permitted by 14 C.F.R. § 91.501 (d) when it charged for double the fuel, oil, lubricants, and other additives and the MSP.

**ANSWER**: This allegation is a legal conclusion not subject to admission or denial. To the extent a response is required, deny.

20. Hinman charged Zeigler for de-icing or anti-icing for flights conducted under the timeshare agreement on January 27, 2014, March 12-16, 2014, and April 14-15, 2014.

**ANSWER**: Admit.

21. Hinman charged Angel Wings for de-icing or anti-icing for flights conducted under the timeshare agreement on January 29, 2014 and January 31, 2014.

**ANSWER**: Admit.

22. De-icing and anti-icing charges are not authorized under 14 C.F.R. § 91.501(d)(l)-(9).

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, deny.

23. Hinman charged more than the amount permitted under 14 C.F.R. § 91.501(d) when it charged for the MSP and de-icing or anti-icing while charging double the fuel, oil, lubricants, and other additives.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or

admission. To the extent a response is required, deny.

24. Between January 2, 2017, and March 1, 2017, Hinman sent Zeigler invoices for approximately 25 flight legs.

**ANSWER**: Admit.

25. Hinman transported individuals on the approximately 812 flights described above for profit.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, deny.

26. Hinman conducted the approximately 812 flights described above when each was governed by part 135.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, deny.

27. Hinman conducted the approximately 812 flight operations under part 135 when it did not have:

    (a)    a certificate issued under part 119;

    (b)    operations specifications appropriate to conduct operations under part 135;

    (c)    an accepted current manual containing its policies and procedures; and

    (d)    the appropriate economic authority from the Department of Transportation.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, deny.

28. Hinman conducted the approximately 812 flights referenced above under part 135 when it did not:

(a) keep an individual record of each pilot used in its operations conducted under part 135; and

(b) list in its manual the name and title of each person authorized to exercise operational control of its aircraft.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, deny.

29. Hinman conducted the 812 flights referenced above under part 135 when:

(a) the flights were operated by a pilot who had not passed a written or oral test given by the Administrator or authorized check pilot on that pilot's knowledge within the twelve months preceding each flight under 14 C.F.R. § 135.293;

(b) the pilot in command operated under Instrument Flight Rules (IFR) and, since the beginning of the 6th calendar month before that service, that pilot had not passed an instrument proficiency check as required under 14 C.F.R. § 135.297(a);

(c) the pilot in command had not passed a flight check in the type of aircraft the pilot was to fly since the beginning of the 12th calendar month before that service as required under 14 C.F.R. § 135.299;

(d) it did not have a training program approved by the FAA that ensured that each crewmember was adequately trained to perform his or her assigned duties; and

(e) the pilot-in-command had not completed the appropriate initial or recurrent training phase of an approved training program since the beginning of the 12th calendar month before that service.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, deny.

### IV. FEDERAL AVIATION REGULATIONS VIOLATED

30. By reason of the foregoing, Hinman failed to comply with the following Federal Aviation Regulations:

(a) 14 C.F.R. § 119.5(g), which states that no person may operate as a direct air carrier or as a commercial operator without, or in violation of, an appropriate certificate and appropriate operations specifications.

(b) 14 C.F.R. § 119.5(i), which states that no person may operate as a direct air carrier without holding appropriate economic authority from the Department of Transportation.

(c) 14 C.F.R. § 135.21(a), which states that each certificate holder, other than one who uses only one pilot in the certificate holder's operations, shall prepare and keep current a manual setting forth the certificate holder's procedures and policies acceptable to the Administrator.

(d) 14 C.F.R. § 135.63(a)(4), which states each certificate holder shall keep at its principal business office or at other places approved by the Administrator, and shall make available for inspection by the Administrator an individual record of each pilot used in operations under this part.

(e) 14 C.F.R. § 135.77, which states that each certificate holder is responsible for operational control and shall list, in the manual required by §135.21, the name and title of each person authorized by it to exercise operational control.

(f) 14 C.F.R. § 135.293(a), which states that no certificate holder may use a pilot, nor may any person serve as a pilot, unless, since the beginning of the 12th calendar month before that service, that pilot has passed a written or oral test, given by the Administrator or an authorized check pilot, on that pilot's knowledge in the areas set forth by that section.

(g) 14 C.F.R. § 135.297(a), which states that no certificate holder may use a pilot, nor may any person serve, as a pilot in command of an aircraft under IFR unless, since the beginning of the 6th calendar month before that service, that pilot has passed an instrument proficiency check under this section administered by the Administrator or an authorized check pilot.

(h) 14 C.F.R. § 135.299, which states that no certificate holder may use a pilot, nor may any person serve, as a pilot in command of a flight unless, since the beginning of the 12th calendar month before that service, that pilot has passed a flight check in one of the types of aircraft which that pilot is to fly.

(i) 14 C.F.R. § 135.323(a), which states that each certificate holder required to have a training program under § 135.341 shall establish and implement a training program that satisfies the requirements of this subpart and that ensures that each crewmember, aircraft dispatcher, flight instructor and check airman is adequately trained to perform his or her assigned duties. Prior to implementation, the certificate holder must obtain initial and final FAA approval of the training program.

(j) 14 C.F.R. § 135.343, which states that no certificate holder may use a person, nor may any person serve, as a crewmember in operations under this part unless that crewmember has completed the appropriate initial or recurrent training phase of the training program appropriate to the type of operation in which the crewmember is to serve since the beginning of the 12th calendar month before that service.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, Hinman denies any wrongdoing and denies liability.

31. Under 49 U.S.C. § 46301(a)(5)(A), Hinman is subject to a civil penalty not to exceed $11,000 for each violation of the Federal Aviation Regulations.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, Hinman denies any wrongdoing and denies liability.

WHEREFORE, Plaintiff demands judgment against Defendant The Hinman Company, together with costs and interest from the date of entry of judgment.

**ANSWER**: This allegation is a legal conclusion which is not subject to denial or admission. To the extent a response is required, Hinman denies any wrongdoing and denies liability.

## AFFIRMATIVE DEFENSES

By asserting the affirmative defenses set forth below, Hinman does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these

defenses. Nor does Hinman admit that Plaintiff is relieved of its burden to prove each and every element of its claims and the damages, if any, to which it is entitled. As for its affirmative defenses, Hinman reasserts and reincorporates as if fully set forth herein its responses above to paragraphs 1 through 31 of the Complaint, and to the unnumbered paragraphs contained therein.

**SECOND DEFENSE**

The Amended Complaint, and each purported cause of action therein, fails to state facts sufficient to constitute a cause of action against Hinman and further fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any other relief whatsoever, from Hinman.

**THIRD DEFENSE**

Plaintiff's Amended Complaint is not ripe because the Plaintiff failed to satisfy the presuit notice requirements of 14 C.F.R. § 13.15, the Plaintiff's administrative orders, and the Administrative Procedures Act, 5 USC §§ 551 et seq. Specifically, the claims in the Amended Complaint are not ripe because Plaintiff failed to issue to Hinman a written "a statement of the charges, the applicable law, rule, regulation, or order, the amount of civil penalty that the Administrator will accept in full settlement of the action or an offer to compromise the civil penalty" alleging civil penalties under 49 U.S.C. § 46301(a)(5) as required by 14 CFR §13.15(c)(1) prior to filing the Complaint and Amended Complaint. Hinman adopts by reference the defense provided by the United States Supreme Court and Sixth Circuit in the following cases: *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Gafurova v. Whitaker*, 911 F.3d 321, 330 (6th Cir. 2018); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 467 (6th Cir. 2004); *Baumgardner v. Secretary, United States Dep't. of Housing & Urban Development,* 960 F.2d 572, 577-78 (6th Cir.1992)

## FOURTH DEFENSE

Plaintiff's failed to satisfy a jurisdictional prerequisite to bringing suit because the Plaintiff failed to meet the requirements of 14 C.F.R. § 13.15 and the Plaintiff's administrative orders.

## FIFTH DEFENSE

The penalty sought by the Plaintiff is inappropriate and unlawful under 49 U.S.C. § 46301.

## SIXTH DEFENSE

Plaintiff's claim for sanctions is excessive and thus barred (a) by the Eighth Amendment of the United States Constitution, (b) by the Fifth Amendment of the United States Constitution prohibiting substantive and procedural due process violations, (c) to the extent such sanctions are attempted to be imposed without requiring the burden of proof to be beyond a reasonable doubt and also in accordance with the protections of the Fourth, Fifth, and Eighth Amendments of the Constitution. Hinman adopts by reference the defense, criteria, limitation, standard and constitutional protections mandated or provided by the United States Supreme Court in the following cases: *Daniels v. Williams*, 474 U.S. 327 (1986); *Austin v. United States*, 509 U.S. 602 (1993); *United States v. Bajakajian*, 524 U.S. 321 (1998); *BMW v. Gore*, 517 U.S. 559 (1996); *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 923 (2001); *State Farm v. Campbell*, 538 U.S. 408 (2003); and *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

## SEVENTH DEFENSE

Some or all of Plaintiff's claims are barred because of Plaintiff's failure to follow procedures required by statute, regulation, and its own FAA Orders, to include, without

limitation, Plaintiff's failure to follow the procedures required in 5 USC §§ 551 *et seq*, 49 U.S.C. § 46301, 14 C.F.R. § 13.15, Chapter 6, Paragraph 15(b)(1) of FAA Order 2150.3B, Chapter 6, paragraph 15(c) of FAA Order 2150.3B, Appendix B of FAA Order 2150.3B, and the FAA's own Administrative Compliance Program, as described in FAA Order 8000.373A.

## EIGHTH DEFENSE

Some or all of Plaintiff's claims are barred by laches, waiver and/or estoppel.

## NINTH DEFENSE

Hinman reserves the right to assert additional, different, or modified affirmative defenses at such time and to such extent as warranted by discovery and the factual development of this case.

## JURY DEMAND

Hinman respectfully makes a demand for a trial by a jury on all issues so triable.

Dated: February 12, 2019 

Respectfully Submitted,

BARNES & THORNBURG LLP
Attorneys for Defendant

By:    */s/ Todd A. Dixon*
Todd A. Dixon (P81618)
171 Monroe Avenue, N.W., Suite 1000
Grand Rapids, MI 49503
Ph: (616) 742-3930
Fx: (616) 742-3999
tdixon@btlaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing Defendant's Amswer to the Amended Complaint through the Court's electronic filing system and served by mail on anyone unable to accept electronic filing on February 12, 2019.

          BARNES & THORNBURG LLP
          Attorneys for Defendant

          By: */s/ Todd A. Dixon*
              Todd A. Dixon (P81618)
          171 Monroe Avenue, N.W., Suite 1000
          Grand Rapids, MI 49503
          Ph: (616) 742-3930
          Fx: (616) 742-3999
          tdixon@btlaw.com