Exhibit 1

## UNITED STATES DEPARTMENT OF JUSTICE

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Federal Aviation Administration (collectively, the "United States") and The Hinman Company ("Hinman") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      Hinman is a regional commercial real estate company with its principal place of business in Kalamazoo, Michigan.

B.      On October 4, 2018, the United States filed an action in the United States District Court for the Western District of Michigan captioned *United States v. The Hinman Company* (No. 1:18-cv-01140) (the "Civil Action").

C.      The United States contends that it has certain civil claims against Hinman arising from certain flights Hinman operated in violation of the Federal Aviation Regulations ("FARs") during the period from October 4, 2013, through January 20, 2017. The alleged conduct is referred to below as the Covered Conduct and includes all conduct alleged in the Federal Aviation Administration's June 12, 2018 Civil Penalty Letter, all allegations made in the Civil Action, and the following alleged conduct:

Hinman's wholly owned subsidiary, HincoJet, LLC, owned a Raytheon Aircraft Company Beechjet 400a, registered as N580RK, and a Hawker 900XP, registered as N580RJ. Hinman did not hold a certificate issued under 14 C.F.R. part 119 ("Part 119") and operations specifications appropriate to operate under 14 C.F.R. part 135 ("Part 135"). For example, Hinman never maintained certificates to conduct commercial operations (i.e., flights for compensation or hire), Hinman's pilots did not pass annual written or oral tests and aircraft flight checks or semi-

1

annual instrument proficiency checks, and Hinman never implemented an FAA-approved training program for relevant personnel.

Hinman conducted hundreds of commercial flights with both aircraft pursuant to timeshare agreements it entered into with three timesharees (collectively, the "Timesharees"). On each of these flights, Hinman charged the Timesharees for costs over and above those permitted under 14 C.F.R. § 91.501(d), including a maintenance service plan fee and, on certain flights, a de-icing fee. Hinman already charged the Timesharees two times the cost of fuel, and these additional fees are not permitted under 14 C.F.R. § 91.501(d). By charging the Timesharees for costs not permitted under 14 C.F.R. § 91.501(d), Hinman operated these flights as commercial flights in violation of parts 119 and 135.

D.      This Settlement Agreement is neither an admission of liability by Hinman nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.      The Parties agree to a settlement of $2,000,000 ("Total Settlement Amount"). Hinman shall pay to the United States $500,000 ("Initial Settlement Payment") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of Michigan no later than 10 days after the Effective Date of this Agreement. Conditioned on Hinman's completion of a successful monitoring period as defined in Exhibit 1 to this Agreement, the United States agrees to forgive $1,500,000 ("Forgiven Amount") of the Total Settlement Amount. However, upon a "Violation" qualifying as a "Final Violation," as those terms are defined in Exhibit 1, Hinman shall pay to the United States the Forgiven Amount of $1,500,000 by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of Michigan no later than 10 days after a Violation qualifies as a Final Violation, subject to the terms of Exhibit 1.

The United States agrees not to seek pre-judgment interest of the Forgiven Amount to the extent a Final Violation occurs.

2.      Subject to the exceptions in Paragraph 3 (concerning excluded claims) below, and conditioned upon Hinman's full payment of the Initial Settlement Payment and, if necessary, the Forgiven Amount (subject to the terms of Exhibit 1), the United States releases Hinman, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim (including attorney's fees, costs, and expenses of every kind and however denominated) the United States has for the Covered Conduct under the Federal Aviation Act of 1958, as amended, and the FARs.

3.      Notwithstanding the release given in paragraph 2 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability of individuals; and

g.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

4.    Hinman waives and shall not assert any defenses Hinman may have to any

criminal prosecution or administrative action relating to the Covered Conduct that may be based

in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth

Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment

of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or

administrative action.

5.    Hinman fully and finally releases the United States, its agencies, officers, agents,

employees, and servants, from any claims (including attorney's fees, costs, and expenses of

every kind and however denominated) that Hinman has asserted, could have asserted, or may

assert in the future against the United States, its agencies, officers, agents, employees, and

servants, related to the Covered Conduct and the United States' investigation and prosecution

thereof.

6.    Consistent with the terms of Exhibit 1, Hinman agrees to cooperate fully and

truthfully with the United States' investigation of individuals and entities not released in this

Agreement.  Upon reasonable notice, Hinman shall encourage, and agrees not to impair, the

cooperation of its directors, officers, and employees, and shall use its best efforts to make

available, and encourage, the cooperation of former directors, officers, and employees for

interviews and testimony, consistent with the rights and privileges of such individuals.  Hinman

further agrees to furnish to the United States, upon request, complete and unredacted copies of

all non-privileged documents, reports, memoranda of interviews, and records in its possession,

custody, or control concerning any investigation of the Covered Conduct that it has undertaken,

or that has been performed by another on its behalf.

7.    This Agreement is intended to be for the benefit of the Parties only.

8.      Upon receipt of the Initial Settlement Payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

9.      Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

10.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

11.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Michigan. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

12.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

13.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

14.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

15.     This Agreement is binding on Hinman's successors, transferees, heirs, and assigns.

16.     All parties consent to the parties' disclosure of this Agreement, and information about this Agreement, to the public.

17.     This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement").  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 8/15/19          BY: _____
                             Andrew J. Hull
                             Assistant United States Attorney
                             U.S. Attorney's Office for the
                             Western District of Michigan

## FEDERAL AVIATION ADMINISTRATION

DATED: _____          BY: _____
                                   Benjamin Borelli
                                   Office of Chief Counsel
                                   Federal Aviation Administration

## THE HINMAN COMPANY

DATED: _____          BY: _____
                                   Roger Hinman
                                   Chief Executive Officer
                                   The Hinman Company

DATED: _____          BY: _____
                                   Todd A. Dixon
                                   Barnes & Thornburg, LLP
                                   Counsel for Hinman

THE UNITED STATES OF AMERICA


DATED: _____          BY: _____
                                   Andrew J. Hull
                                   Assistant United States Attorney
                                   U.S. Attorney's Office for the
                                   Western District of Michigan


FEDERAL AVIATION ADMINISTRATION


DATED: 8/15/19          BY: _____
                            Benjamin Borelli
                            Office of Chief Counsel
                            Federal Aviation Administration


THE HINMAN COMPANY


DATED: _____          BY: _____
                                   Roger Hinman
                                   Chief Executive Officer
                                   The Hinman Company


DATED: _____          BY: _____
                                   Todd A. Dixon
                                   Barnes & Thornburg, LLP
                                   Counsel for Hinman

## THE UNITED STATES OF AMERICA

DATED: _____        BY: _____
                            Andrew J. Hull
                            Assistant United States Attorney
                            U.S. Attorney's Office for the
                            Western District of Michigan

## FEDERAL AVIATION ADMINISTRATION

DATED: _____        BY: _____
                            Benjamin Borelli
                            Office of Chief Counsel
                            Federal Aviation Administration

## THE HINMAN COMPANY

DATED: 8-15-19        BY: _____
                            Roger Hinman
                            Chief Executive Officer
                            The Hinman Company

DATED: 8-15-19        BY: _____
                            Todd A. Dixon
                            Barnes & Thornburg, LLP
                            Counsel for Hinman

                            *Signed only to indicate
                            that Counsel has reviewed
                            and approved.*

# MONITORING AGREEMENT
# EXHIBIT 1 TO SETTLEMENT AGREEMENT

## Section 1: Forgiven Amount.

Pursuant to the Settlement Agreement, the United States of America, the Federal Aviation Administration ("**FAA**") and The Hinman Company ("**Hinman**") (collectively, the "**Parties**") have agreed that One Million Five Hundred Thousand United States Dollars ($1,500,000.00) shall be forgiven (the "**Forgiven Amount**") based on the terms and conditions herein.

## Section 2: Monitoring Period.

The Monitoring Period shall be a period of three (3) years commencing on the execution date of the Settlement Agreement and terminating three (3) years following the execution date of the Settlement Agreement (the "**Monitoring Period**").

## Section 3: Violation.

Hinman would only be liable for the Forgiven Amount if (a) Hinman, during the Monitoring Period, conducts any commercial operations for compensation or hire without a Part 119 certificate and for which it does not meet one of the exceptions contained in Part 91 of the FAA regulations ("**FAR**") (a "**Violation**"), and (b) the Violation qualifies as a "**Final Violation**" (as that term is defined in Section 4 herein). For avoidance of doubt, operations conducted by Hinman (i) for which Hinman complies with the compensation limitations of 14 C.F.R. 91.501 or (ii) for compensation where Hinman possesses the requisite certificate or is in compliance with any other FAR permitting such compensation for such operations, shall not be considered a Violation.

## Section 4: Final Violation.

A Violation shall be a Final Violation when there is a judicially final determination that Hinman has committed a Violation, or upon a voluntary settlement of any alleged Violation(s) between FAA and Hinman.

For purposes of investigating a potential Violation during the Monitoring Period through FAA's administrative process, and regardless of the amount of the proposed civil penalty, the FAA agrees that it will (a) properly apply all applicable FAA policy and all applicable law, (b) consider all evidence (verbal or documentary) presented by Hinman, and (c) include all material facts in any statement of facts, to include those facts favorable to Hinman. The FAA agrees that any alleged Violation would only proceed to initiation if it complies with each of (a), (b) and (c).

For purposes of investigation of a potential Violation during the Monitoring Period through FAA's administrative process, and regardless of the amount of the proposed civil penalty, the FAA also agrees to subject the matter to a heightened review that includes most elements of the FAA's published enforcement alerts process. This review would not include review and approval of the FAA Administrator, because he would serve as the FAA Decisionmaker in the event of appeal from the related civil penalty action and is therefore precluded from having advance knowledge of the underlying facts. However, it would require the independent review and determination of the

1

FAA's Director of Flight Standards that a regulatory violation has occurred. The case would only proceed to initiation with this concurrence, and it therefore could not become a Final Violation in the absence of this high level of additional scrutiny.

The FAA's enforcement alerts process is outlined in FAA Order 2150.3C, ch. 8, ¶ 10. Generally, enforcement alerts ensure that: (1) significant legal enforcement actions reflect appropriate and consistent application of national policy and law; and (2) key headquarters personnel are aware of, and given the opportunity to concur in or not concur in, significant legal enforcement actions. The FAA agrees to transmit to the Assistant Chief Counsel for Enforcement, or a delegee, an enforcement alert memorandum containing relevant information for the case, including, as applicable: (i) an overview of the case and statement of the facts; (ii) the nature of an entity that is the subject of the alert; (iii) considerations presented by the apparent violator; (iv) a sanction determination; and (v) other observations about the case. The FAA agrees that the Assistant Chief Counsel for Enforcement, or a delegee, will coordinate enforcement actions that would be considered Violations under this Monitoring Agreement with appropriate program office officials separate from the Grand Rapids Flight Standards District Office. The FAA agrees that the Assistant Chief Counsel for Enforcement, or a delegee, will ensure that the action reflects the appropriate application of FAA policy and applicable law and consider other factors relevant to the action. As is the case with all enforcement alerts, the regulated party does not participate in the enforcement alert process.

The Parties agree that a Violation cannot become a Final Violation unless the FAA satisfies the requirements of this Section 4.

### Section 5: FAA Monitoring.

During the Monitoring Period, Hinman agrees that it will be subject to additional and more frequent periodic monitoring by the FAA to ensure compliance with the relevant FARs and provisions of this Monitoring Agreement. The FAA agrees that such additional and frequent periodic monitoring shall be conducted in accordance with all applicable laws, FARs, Advisory Circulars, FAA Orders, and any other applicable FAA guidance. The FAA agrees that such additional and more frequent periodic monitoring shall not interfere with Hinman's aircraft operations or the safety of Hinman's flight operations. In the event Hinman determines that the FAA's additional and more frequent periodic monitoring has interfered with Hinman's aircraft operations or safety it shall notify the FAA in writing of the nature of the interference, and the FAA shall be responsive and cooperative in resolving the underlying operational or safety issue, and shall comprehensively address all underlying operational or safety concerns in writing within a reasonable time period.

Hinman agrees that, during the Monitoring Period and upon written request by the FAA, Hinman will provide copies of any invoicing issued to third parties that involve compensation for flights on aircraft operated by Hinman and any flight logs. Hinman shall provide copies of such records to the FAA within a reasonable time period, but not to exceed thirty (30) days. If Hinman has any questions regarding the scope of the request, the FAA will respond with a specific list of the documents requested.

2

## Section 6: Termination of Monitoring Agreement.

This Monitoring Agreement shall be terminated on the date that falls three (3) years after the execution date of the Settlement Agreement. The Forgiven Amount shall be permanently forgiven if there have been no Violations discovered during the Monitoring Period. If no Violations discovered during the Monitoring Period later become Final Violations, the Forgiven amount shall be permanently forgiven.

**(Signature Page Follows)**

**IN WITNESS WHEREOF**, the Parties, by executing this Monitoring Agreement, agree to be bound by its terms and conditions.

THE HINMAN COMPANY

By:_____

Printed Name:_____

Its:_____

Date:_____

THE UNITED STATES OF AMERICA

By: _____

Printed Name: ANDREW J. HULL

Its: ASSISTANT U.S. ATTORNEY

Date: 6/15/19

THE FEDERAL AVIATION
ADMINISTRATION

By:_____

Printed Name:_____

Its:_____

Date:_____

**IN WITNESS WHEREOF,** the Parties, by executing this Monitoring Agreement, agree to be bound by its terms and conditions.

THE HINMAN COMPANY

By: _____
Printed Name: Roger E. Hinman
Its: President
Date: 8-15-19

THE UNITED STATES OF AMERICA

By: _____
Printed Name: _____
Its: _____
Date: _____

THE FEDERAL AVIATION ADMINISTRATION

By: _____
Printed Name: _____
Its: _____
Date: _____

**IN WITNESS WHEREOF**, the Parties, by executing this Monitoring Agreement, agree to be bound by its terms and conditions.

THE HINMAN COMPANY

By:_____
Printed Name:_____
Its:_____
Date:_____

THE UNITED STATES OF AMERICA

By:_____
Printed Name:_____
Its:_____
Date:_____

THE FEDERAL AVIATION
ADMINISTRATION

By: *[signature]*
Printed Name: Benjamin M. Barett
Its: General Attorney
Date: 8/15/19

4